## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT FREEDMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-1052-SLR |
| | ) |
| SUMNER M. REDSTONE, PHILIPPE | ) |
| P. DAUMAN, THOMAS E. DOOLEY, | ) |
| GEORGE S. ABRAMS, ALAN C. | ) |
| GREENBERG, SHARI REDSTONE, | ) |
| FREDERIC V. SALERNO, BLYTHE J. | ) |
| MCGARVIE, CHARLES E. PHILLIPS, | ) |
| JR., WILLIAM SCHWARTZ, ROBERT | ) |
| K. KRAFT, and VIACOM INC., | ) |
| | ) |
| Defendants. | ) |

Joseph J. Farnan, III, Esquire, and Brian Farnan, Esquire of Farnan LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Alexander Arnold Gershon, Esquire, Michael A. Toomey, Esquire, and Daniel E. Bacine, Esquire of Barrack, Rodos & Bacine.

Jon Abramczyk, Esquire, and John P. DiTomo, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Stuart J. Baskin, Esquire, and Jaculin Aaron, Esquire of Shearman & Sterling LLP.

## MEMORANDUM OPINION

Dated: July *16* , 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Shareholder Robert Freedman ("plaintiff") filed the instant suit against nominal defendant Viacom Inc. ("Viacom") and the eleven individual members (the "director defendants") of its board of directors ("the Board"), asserting derivative and direct claims related to the manner in which Viacom's board, through its compensation committee ("the Committee"), determined incentive compensation for three senior executives ("the executives"), who also serve as directors. (D.I. 1) The gravamen of plaintiff's complaint is that the incentive compensation at issue violated Viacom's 2007 Senior Executive Short-Term Incentive Plan ("the 2007 Plan") and that a similar 2012 Senior Executive Short-Term Incentive Plan ("the 2012 Plan") was subsequently approved by an invalid shareholder vote.

Specifically, plaintiff's derivative claim, brought on behalf of Viacom against the director defendants, alleges breach of fiduciary duty, waste, and unjust enrichment arising from the committee's implementation of the 2007 Plan and the executives' acceptance of the allegedly excessive compensation. (Id. at ¶¶ 50-53) The direct claim alleges that shareholder approval of the 2012 Plan was improper under I.R.C. § 162(m) because only one class of shareholders was permitted to vote on it. (Id. at ¶¶ 54-59) Plaintiff seeks damages in excess of $36 million on behalf of Viacom; an injunction in favor of Viacom against the director defendants from paying excessive compensation under the 2012 Plan; and a new shareholder vote on the 2012 Plan, with the participation of all Viacom shareholders. (Id. at Prayer for Relief ¶¶ A, B, C)

Currently before the court is a motion to dismiss filed by Viacom and the director

defendants (collectively, "defendants"). (D.I. 5) The motion to dismiss avers that neither the derivative nor the direct claim states a cause of action under Federal Rule of Civil Procedure 12(b)(6) and that the derivative claim also fails to meet the pleading requirements for demand futility under Federal Rule of Civil Procedure 23.1. The court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1332, 1340, and 1367.

## II. BACKGROUND

### A. The Parties

Plaintiff, a citizen of Pennsylvania, avers that he has been a holder of Viacom class B common stock continuously since December 31, 2005. (Id. at ¶¶ 1, 5; D.I. 10) Plaintiff filed the instant suit against defendants on August 17, 2012.

Viacom is an entertainment content corporation organized under the laws of the State of Delaware and with its principal place of business in the State of New York. (D.I. 1 at ¶ 4) It is a publicly traded company and, as of July 15, 2012, had outstanding 51,152,571 shares of class A common stock and 463,435,375 shares of class B common stock. (Id.) Viacom's certificate of incorporation does not grant class B common stock any voting power. (Id. at ¶ 56; D.I. 6, ex. C) The eleven director defendants – Sumner M. Redstone, Philippe P. Dauman, Thomas E. Dooley, George S. Abrams, Alan C. Greenberg, Shari Redstone, Frederic V. Salerno, Blythe J. McGarvie, Charles E. Phillips, Jr., William Schwartz, and Robert K. Kraft – are all citizens of states other than Pennsylvania. (D.I. 1 at ¶ 1)

### B. The 2007 Plan

For a publicly held corporation, compensation of the chief executive officer and

2

the four highest compensated executive officers in excess of $1 million is typically not

tax-deductible; however, I.R.C. § 162(m) provides an exception, under which certain

performance-based compensation is tax deductible.[1]   Under I.R.C. § 162(m) and the

_____

[1]I.R.C. § 162(m) provides, in relevant part:

(1) **In general**
In the case of any publicly held corporation, no deduction shall be allowed under this chapter for applicable employee remuneration with respect to any covered employee to the extent that the amount of such remuneration for the taxable year with respect to such employee exceeds $1,000,000.

. . . .

(3) **Covered employee**
For purposes of this subsection, the term "covered employee" means any employee of the taxpayer if –

(A)  as of the close of the taxable year, such employee is the chief executive officer of the taxpayer or is an individual acting in such a capacity, or

(B)  the total compensation of such employee for the taxable year is required to be reported to shareholders under the Securities Exchange Act of 1934 by reason of such employee being among the 4 highest compensated officers for the taxable year (other than the chief executive officer).

(4) **Applicable employee remuneration**
For purposes of this subsection –

. . . .

(C) **Other performance-based compensation**
The term "applicable employee remuneration" shall not include any remuneration payable solely on account of the attainment of one or more performance goals, but only if –

(i)  the performance goals are determined by a compensation committee of the board of directors of the taxpayer which is comprised solely of 2 or more outside directors,

(ii)  the material terms under which the remuneration is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a

3

corresponding Department of Treasury regulations, such performance-based compensation must be based on the attainment of one or more pre-established, objective performance goals that are determined by a compensation committee comprised solely of at least two outside directors. *See* I.R.C. § 162(m)(4)(C)(i); Treas. Reg. § 1.162-27(e)(2)(i). "The terms of the objective formula or standard must preclude discretion to increase the amount of compensation payable that would otherwise be due upon attainment of the goal." Treas. Reg. § 1.162-27(e)(2)(iii)(A). The terms of the remuneration must also be disclosed to shareholders and be approved "by a majority of the vote in a separate shareholder vote." I.R.C. § 162(m)(4)(C)(ii).

The 2007 Plan was approved by a shareholder vote on May 30, 2007. (D.I. 1 at ¶ 10) Plaintiff avers that, since 2008, Viacom has paid annual incentive compensation under the plan to the executives – Sumner Redstone, Dauman, and Dooley – who are also directors. (*Id.* at ¶¶ 7, 16) According to plaintiff, the 2007 Plan required the Committee to award tax-deductible compensation under I.R.C. § 162(m) and did not permit the awarding of compensation that was not tax-deductible. (*Id.* at ¶ 16) The members of the Committee were director defendants Salerno, McGarvie, Phillips, Jr., and Schwartz. (*Id.* at ¶ 8) Until August 2009, Kraft was also a member of the Committee. (*Id.*)

_____

> separate shareholder vote before the payment of such remuneration, and
>
> (iii) before any payment of such remuneration, the compensation committee referred to in clause (i) certifies that the performance goals and any other material terms were in fact satisfied.

4

By its terms, the 2007 Plan required the Committee to establish a "performance period;" designate the participants for the performance period; select "performance goals" from a list set forth in Section 2.2(b) of the 2007 Plan; establish specific "performance targets" for each performance goal selected; and set "target awards" for each participant. (*Id.* at ¶¶ 16, 17; D.I. 6, ex. A at §§ 1.2(e), 2.2(a)) Section 2.2(b) provided the following performance goals from which the Committee could choose:

> OIBDA [or operating income before depreciation and amortization], OIBDA Without Intercompany Eliminations, Operating Income, Free Cash Flow, Net Earnings, Net Earnings From Continuing Operations, Earnings Per Share, Revenue, Net Revenue, Operating Revenue, total shareholder return, share price, return on equity, return in excess of cost of capital, profit in excess of cost of capital, return on assets, return on invested capital, net operating profit after tax, operating margin, profit margin or any combination thereof.

(D.I. 1 at ¶ 16; D.I. 6, ex. A at § 2.2(b))

The Committee was then tasked with certifying, at the end of the performance period, "whether the performance targets were achieved in the manner required by [I.R.C. §] 162(m)." (D.I. 6, ex. A at § 2.4) If the performance targets had been achieved, "the Awards for such Performance Period shall have been earned except that the Committee may, in its sole discretion, reduce the amount of any Award to reflect the Committee's assessment of the Participant's individual performance or for any other reason." (*Id.*) The 2007 Plan imposed a limitation on awards, such that awards granted under it to any individual could not exceed eight times the individual's salary, "but in no event shall such amount exceed $51.2 million."[2] (*Id.*, ex. A at § 2.3)

---

[2]Or, by the court's calculation (assuming 40-hour work weeks), approximately $25,600 per hour.

5

Plaintiff avers that, in purporting to follow the 2007 Plan, the Committee selected performance measures from § 2.2(b), established a "range" of performance goals for each of those performance measures, and then set each executive's target award at "some arbitrary designated point" on the range of performance goals. (D.I. 1 at ¶ 17) Because the Committee used more than one of the § 2.2(b) performance measures, it allegedly assigned a weight to each performance measure. (*Id.* at ¶ 18) Plaintiff claims that, at the end of each performance period, that weight would be multiplied by the actual performance to obtain a "weighted percentage point" for each performance measure. (*Id.* at ¶ 18) The Committee would then add up those weighted percentage points to obtain a "total multiplier," which was applied to each executive's target award. (*Id.*) According to plaintiff, the actual bonus could be between 25% and 200% of the target bonus. (*Id.* at ¶ 17)

It is alleged that the implementation of the 2007 Plan differed from how it was supposed to work in theory. (*See id.* at ¶¶ 17-22) Between 2008 and 2011, the Committee allegedly used subjective and discretionary non-financial qualitative factors, in addition to certain of the objective quantitative factors set forth in § 2.2(b), to determine approximately 20% of the bonus awarded to each executive.[3] (*Id.* at ¶¶ 19-20) Between 2009 and 2011, the Committee allegedly committed further wrongdoing by using "positive discretion" to provide additional compensation based on the

---

[3]Plaintiff maintains that these qualitative factors included "the extent to which the Committee, in its discretion, found that the performance targets were met in ways that related to the fundamentals of the business and furthered [Viacom's] long-term interests as well as the appropriateness of excluding unusual expenses or impacts on financial results . . . , which the Committee believed had the effect of distorting the performance goals." (D.I. 1 at ¶ 20)

performance of each executive in subjective areas.  (*Id.* at ¶ 21)  These subjective areas allegedly included "leadership and vision, continuing to navigate economic challenges, continuing to foster a diverse and inclusive corporate culture, continuing to enhance the legal function across Viacom and its divisions, and achieving success in . . . risk management and technology responsibilities."  (*Id.*)  Plaintiff avers that "subjectivity pervade[d] this bonus calculation in other ways as well," including one executive, Dauman, making specific bonus recommendations for another executive, Dooley.  (*Id.* at ¶¶ 7, 22)  Plaintiff asserts that the committee's use of subjective factors to determine bonuses between 2008 and 2011 and to upwardly adjust bonuses between 2009 and 2011 resulted in a total of $36,645,750 in excess compensation and violated both the 2007 Plan and I.R.C. § 162(m).  (*Id.* at ¶¶ 19, 24-46)

### C.  The 2012 Plan

Pursuant to Department of Treasury regulation § 1.162-27(e)(4)(vi), which required stockholder reapproval of the 2007 Plan every five years, Viacom subsequently sought stockholder approval of the 2012 Plan at its 2012 annual meeting. (*Id.* at ¶ 55; D.I. 6, ex. B)  Plaintiff contends that the 2012 Plan is substantially identical to the 2007 Plan and that "[t]he Board's purpose of seeking shareholder approval of the 2012 Plan was to allow compensation paid pursuant to awards made after the 2012 annual meeting to continue to be tax deductible . . . as 'performance based compensation' pursuant to I.R.C. § 162(m)."  (D.I. 1 at ¶¶ 10, 55)  Although class B shareholders were given notice of Viacom's 2012 annual meeting and were allowed to attend, only class A shareholders were permitted to vote on the 2012 Plan.  (*Id.* at ¶ 56;

7

D.I. 6, ex. B)  Plaintiff avers that, because director Sumner Redstone directly or

indirectly owned 79.5% of the class A shares, "passage of the 2012 Plan was assured,"

regardless of what the other shareholders, including class B shareholders, wanted.

(D.I. 1 at ¶ 57)

## III.  STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 23.1

Pursuant to Federal Rule of Civil Procedure 23.1(b)(3), a shareholder bringing a

derivative action must file a verified complaint that "state[s] with particularity:"

> (A) any effort by the plaintiff to obtain the desired action from the directors
> or comparable authority and, if necessary, from the shareholders or
> members; and
>
> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3).  Therefore, Rule 23.1 provides a heightened pleading

standard.  "Although Rule 23.1 provides the pleading standard for derivative actions in

federal court, the substantive rules for determining whether a plaintiff has satisfied that

standard 'are a matter of state law.'"  *King v. Baldino*, 409 F. App'x 535 (3d Cir. 2010)

(citing *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992)).  "Thus, federal courts

hearing shareholders' derivative actions involving state law claims apply the federal

procedural requirement of particularized pleading, but apply state substantive law to

determine whether the facts demonstrate [that] demand would have been futile and can

be excused."[4]  *Kantor v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

> In this regard, the Delaware Supreme Court has explained that
> the entire question of demand futility is inextricably bound to issues of

---

[4]Plaintiff's derivative claim in this action is a state law claim.

8

business judgment and the standard of that doctrine's applicability. . . . It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.

*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000). "The key principle upon which this area of . . . jurisprudence is based is that the directors are entitled to a **presumption** that they were faithful to their fiduciary duties." *Beam ex. rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004). Therefore, the burden is on the party challenging a board's decision to establish facts rebutting the presumption that the business judgment rule applies. *Levine v. Smith*, 591 A.2d 194, 205-06 (Del. 1991).

By promoting the exhaustion of intracorporate remedies as an alternate dispute resolution over immediate recourse to litigation, "the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations." *Aronson*, 473 A.2d at 811-12. With this framework in mind, the Delaware Supreme Court has characterized the exercise of determining demand futility as deciding whether, under the particularized facts alleged, a reasonable doubt is created that (1) "the directors are disinterested and independent," or (2) "the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814; *see also Brehm*, 746 A.2d at 256 ("These prongs are in the disjunctive. Therefore, if either prong is satisfied, demand is excused."). "The spirit that clearly animates [this] test is a [c]ourt's unwillingness to set aside the prerogatives of a board of directors unless the derivative plaintiff has shown some reason to doubt that the board will exercise its discretion [in responding to demand] impartially and in good faith." *In re*

9

*infoUSA, Inc. v. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555; *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to

relief, in order to give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted)

(interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in

*Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-

part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son,*

*Inc.*, 610 F.3d 217, 219 (3d Cir. 2010)*; Fowler v. UPMC Shadyside*, 578 F.3d 203, 210

(3d Cir. 2009). First, a court should separate the factual and legal elements of a claim,

accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-

11. Second, a court should determine whether the remaining well-pled facts sufficiently

show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556

U.S. at 679). As part of the analysis, a court must accept all well-pleaded allegations in

the complaint as true, and view them in the light most favorable to the plaintiff. *See*

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406

(2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court may

consider the pleadings, public record, orders, exhibits attached to the complaint, and

documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues*

& *Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. The Derivative Claim

Defendants move to dismiss the derivative claim for failure to sufficiently plead that demand would be futile under Rule 23.1 and for failure to state a claim under Rule 12(b)(6). Plaintiff admittedly did not make any pre-litigation demand on the Board to bring suit, but contends that demand is excused as futile under Delaware law. (D.I. 1 at ¶¶ 47-49)

#### 1. Demand futility under Rule 23.1

##### a. Director disinterestedness and independence

Under the first prong of *Aronson*, if the factual allegations raise a reasonable doubt that a majority of the board consists of disinterested and independent directors,

then the protections of the business judgment rule are not available to the board. *Aronson*, 473 A.2d at 814-15. There are two ways a director can be deemed "interested" in a transaction. First, "[a] director is interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995); *see also Orman v. Cullman*, 794 A.2d 2, 25 n.50 (Del. Ch. 2002). Materiality is assessed based on a particular director's financial circumstances. *Orman*, 794 A.2d at 23. The second occurs where "a director stands on both sides of the challenged transaction;" this latter way of showing interestedness does not require allegations of materiality. *Id.* at 25 n.50. In contrast, "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. A director's independence may be challenged by "allegations that raise a reasonable inference that a given director is dominated through a 'close personal or familial relationship or through force of will,' or is so beholden to an interested director that his or her 'discretion would be sterilized.'" *In re infoUSA*, 953 A.2d at 985 (quoting *Orman*, 794 A.2d at 25 n.50; *Beam*, 845 A.2d at 1050).

Plaintiff's complaint alleges that a majority – six out of eleven – of the directors are interested and not independent. (D.I. 1 at ¶ 49) Specifically, he avers that the three executives – Sumner Redstone, Dauman, and Dooley – are interested because they received the allegedly improper compensation at issue; director defendants Abrams and Shari Redstone are not independent because Viacom disclosed them as

such in its 2012 proxy statement; and director defendant Greenberg is interested and not independent because he is "a long-time close personal friend of and adviser to [executive] Sumner Redstone." (Id. at ¶ 49; see D.I. 6, ex. B at 7-8)

For purposes of the motion to dismiss, defendants do not dispute that five of those director defendants – Sumner Redstone, Dauman, Dooley, Abrams, and Shari Redstone – are interested and not independent. (D.I. 6 at 9) However, defendants challenge plaintiff's allegation that Greenberg is interested and not independent. (Id. at 9-11)

### (1) Collateral estoppel

As a threshold matter, plaintiff avers that collateral estoppel, or issue preclusion, bars defendants from contesting Greenberg's alleged lack of independence in the instant action. A prior decision, In re Viacom Inc. Shareholder Derivative Litigation, Civ. No. 206527/05, 2006 N.Y. Misc. LEXIS 2891, at *10-12 (N.Y. Sup. June 23, 2006), allegedly determined that Greenberg was not an independent director. (D.I. 1 at ¶ 49) Defendants at bar argue that In re Viacom should not be given any preclusive effect because the New York Supreme Court did not hold, as a factual or legal matter, that Greenberg was an interested director. (D.I. 11 at 2-3)

The court must give a state court decision the same full faith and credit that it would enjoy in that state's courts. 28 U.S.C. § 1738.[5] Plaintiff contends (and defendants do not dispute) that the applicability of collateral estoppel in the instant case

---

[5]28 U.S.C. § 1738 provides, in part, that authenticated judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

should be governed by New York law. (See D.I. 8 at 6; D.I. 11 at 2-3)  Under New York

law, there are two requirements for collateral estoppel to apply:  (1) "[t]here must be an

identity of issue which has necessarily been decided in the prior action and is decisive

of the present action;" and (2) "there must have been a full and fair opportunity to

contest the decision now said to be controlling."  Buechel v. Bain, 766 N.E.2d 914, 919

(N.Y. 2001) (citation omitted); see also Bansbach v. Zinn, 801 N.E.2d 395, 401 (N.Y.

2003) ("Where a pending issue was raised, necessarily decided and material in a prior

action, and where the party to be estopped had a full and fair opportunity to litigate the

issue in the earlier action, fairness and efficiency dictate that the party should not be

permitted to try the issue again." (citation omitted)).

        In In re Viacom, plaintiff shareholders brought a derivative suit against Viacom's

Board, claiming that the compensation paid to three Viacom executive officers was

excessively high.  The plaintiffs asserted that demand was excused as futile because at

least half of a board of twelve directors was interested and not independent.  As in the

instant case, the defendants did not dispute that five of Viacom's directors were

interested and not independent.  They moved to dismiss the derivative action under

Rule 23.1 by arguing that the plaintiffs had failed to sufficiently plead particularized facts

to raise a reasonable doubt that three other directors, including Greenberg, were

disinterested and independent.  In re Viacom, 2006 N.Y. Misc. LEXIS 2891 at *3, *10-

15.  The complaint in that case contained allegations that Greenberg, as Sumner

Redstone's investment banker, had advised Sumner Redstone directly on two large

acquisitions – a 1993 acquisition of Paramount Communications, Inc. and a 1994

acquisition of Blockbuster, Inc.; that Greenberg and his firm, Bear Stearns, had advised

14

Sumner Redstone and Viacom in 2004 on the unwinding of the Blockbuster, Inc.
acquisition; and that Greenberg continued to provide broker and investment services to
both Sumner Redstone and Viacom. *Id.* at \*6, \*11-12.

Based on the plaintiffs' factual allegations, the New York Supreme Court
concluded: "The fact that Greenberg advised Redstone in his personal affairs in two
large acquisitions [and] provided services and continues to provide services to Viacom
is sufficient to create a reasonable doubt as to his ability to evaluate plaintiffs' demand
without a taint of interest, extraneous considerations, or influences." *Id.* at \*11-12
(citation omitted). The New York Supreme Court, therefore, denied the Rule 23.1
motion to dismiss, finding that "plaintiffs ha[d] fulfilled their burden to escape the
demand requirement by sufficiently pleading that a reasonable doubt exist[ed] that
Greenberg was interested in the decision concerning the executives' compensation
packages."[6] *Id.* at \*12.

Plaintiff correctly points out that the disinterestedness or independence of
Greenberg was challenged in *In re Viacom*. However, the court is not persuaded that *In
re Viacom* should be given preclusive effect. In *Bansbach*, the Court of Appeals of New
York was faced with a similar collateral estoppel question. That court declined to give
preclusive effect to an earlier case, *Lichtenberg v. Zinn*, 687 N.Y.S.2d 817 (N.Y. App.
Div. 1999), in which the court had previously rejected the argument that three directors

---

[6]The court notes that the New York Supreme Court's focus on "taint of interest,
extraneous considerations, or influences" seemed to focus on Greenberg's
independence (which relates to extraneous or outside influences) rather than his
disinterestedness (which relates to whether a director was materially affected by, or
stood on both sides of, a transaction). *See Orman*, 794 A.2d at 25 n.50 (distinguishing
between independence and disinterestedness).

15

– the same three whose interestedness was being challenged in *Bansbach* – were "interested" due to prior personal relationships and business dealings. *Bansbach*, 801 N.E.2d at 401-02. It reasoned that *Lichtenberg* – an action that was filed four years before the *Bansbach* action was commenced – "d[id] not for all time and in all circumstances insulate [the three directors'] conduct from similar claims." *Id.* at 402. In addition, unlike in *Lichtenberg*, the three directors were being personally implicated in *Bansbach* and had been named as defendants. Therefore, the *Bansbach* court found that there was no identity of issue, and collateral estoppel did not apply. *Id.*

In the instant case, the court shares several concerns that the *Bansbach* court raised about applying collateral estoppel to bar argument of director disinterestedness and independence. First, the instant case was filed in 2012 and challenges board decisions made between 2008 and 2011, whereas *In re Viacom* was filed in 2005. Just as a director may not be forever insulated from suit, a prior determination that a director is interested or lacks independence does not, "for all time and in all circumstances," necessarily subject his conduct to liability for similar claims. *Id.* It is possible that the relationship between Greenberg and Sumner Redstone has changed in the years since the filing of *In re Viacom*.[7] Second, *In re Viacom* was based on the pleadings, not on any affidavits or other materials evidencing Greenberg's disinterestedness or

---

[7]Demand is made against the board of directors at the time of filing of the complaint. *See In re infoUSA*, 953 A.2d at 985. Although, in answering the motion to dismiss, plaintiff asserts that the relationship between Greenberg and Sumner Redstone has not changed in the time since the filing of *In re Viacom* (*see* D.I. 8 at 6), at this stage of the proceedings, the court can only consider the well-pleaded factual allegations set forth in the complaint, not allegations raised in briefing. *See Barkes v. First Correctional Med.*, Civ. No. 06-104, 2010 WL 1418347, at *2 (D. Del. Apr. 7, 2010).

independence. *See In re Viacom*, 2006 N.Y. Misc. LEXIS 2891, at *11-12. In other words, the decision to allow *In re Viacom* to proceed was a preliminary holding, not a final one, based solely on the plaintiffs' particularized factual pleadings (presumed to be true) versus substantive evidence.[8] Defendants can only be said to have had the opportunity to contest whether the plaintiffs in that action had sufficiently pled a reasonable doubt as to Greenberg's disinterestedness. Therefore, there is no identity of issue, and Greenberg's disinterestedness was not actually decided, as a matter of fact or law, in the prior action. *In re Viacom* carries no preclusive effect under the doctrine of collateral estoppel.

### (2) Factual allegations at bar

As collateral estoppel is inapplicable, the court turns to the sufficiency of the complaint at bar. Under Delaware law, "[i]ndependence is a fact-specific determination made in the context of a particular case." *Beam*, 845 A.2d at 1049. The sole factual allegation regarding Greenberg in the complaint at bar is that he is "a long-time personal friend of and advisor to Sumner Redstone." (D.I. 1 at ¶ 49) However, as the Delaware Supreme Court has reasoned, although

> [a] variety of motivations, including friendship, may influence the demand
> futility inquiry . . . , to render a director unable to consider demand, a
> relationship must be of a bias-producing nature. Allegations of mere
> personal friendship or a mere outside business relationship, standing
> alone, are insufficient to raise a reasonable doubt about a director's
> independence.

*Beam*, 845 A.2d at 1050. The Delaware Supreme Court in *Beam* more specifically held

---

[8]The only judgment that the New York Supreme Court entered was one approving a subsequent settlement in the case. (*See* D.I. 11, ex. A)

that "allegations that [interested director Martha] Stewart and the other directors moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power, are insufficient, without more, to rebut the presumption of independence." *Id.* at 1051.

Plaintiff at bar has pled even less factual detail than the allegations at issue in *Beam*. Standing alone, plaintiff's allegation that Greenberg is a close friend and advisor to an interested director defendant does not create a reasonable doubt that Greenberg would have been "beholden" to another director. Therefore, plaintiff's allegations of interestedness and lack of independence are insufficient to render prelitigation demand futile.

### b. Exercise of valid business judgment

Because the court finds that plaintiff has failed to raise any reasonable doubt that a majority of the Board was disinterested and independent under *Aronson*'s first prong, the demand futility analysis turns on *Aronson*'s second prong – whether the complaint pleads with particularity facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment. "Approval of a transaction by a majority of independent, disinterested directors almost always bolsters a presumption that the business judgment rule attaches [so, ] [i]n such cases, a heavy burden falls on a plaintiff to avoid presuit demand." *See Grobow v. Perot*, 539 A.2d 180, 190 (Del. 1988), *overruled on other grounds by Brehm*, 746 A.2d 244. The second prong focuses on the substantive nature of the board's action.

18

*Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d 244.

The court begins its analysis by presuming that the business judgment rule applies, and that plaintiff has to establish facts rebutting this presumption. *Aronson*, 473 A.2d at 812. The business judgment rule applies, however, "only when the terms of [the shareholder-approved plan] at issue are adhered to." *Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008). "A board's knowing and intentional decision to exceed the shareholders' grant of express (but limited) authority raises doubt regarding whether such decision is a valid exercise of business judgment and is sufficient to excuse a failure to make demand." *Ryan v. Gifford*, 918 A.2d 341, 354 (Del. Ch. 2007); *see also Weiss*, 948 A.2d at 441 ("[A]llegations in a complaint rebut the business judgment rule where they support an inference that the directors intended to violate the terms of stockholder-approved option plans.").

Plaintiff submits that the Board's award of the compensation at issue is not protected by the business judgment rule because the Board authorized payments that were contrary to the terms of the 2007 Plan and I.R.C. § 162(m). (D.I. 1 at ¶¶ 16, 19-46, 48) The parties at bar agree that the 2007 Plan and I.R.C. § 162(m) limit the use of subjective and qualitative factors – namely, that they cannot be used as performance goals or used to upwardly adjust earned bonus awards. (*See id.* at ¶ 12; D.I. 6 at 12-13; D.I. 11 at 5-6) The parties also agree that the Committee used subjective and qualitative factors in the process of awarding compensation. They disagree about whether, in doing so, the Committee exceeded its authority under the 2007 Plan. (D.I.

19

6 at 5-6; D.I. 11 at 5-8)  Plaintiff alleges that the Committee "wrongfully arrogated to itself . . . positive discretion to provide additional compensation" such that "[t]he conduct of the Directors in authorizing the Executives' excessive compensation . . . in contravention of the 2007 Plan . . . [wa]s not the product of a valid exercise of business judgment."  (D.I. 1 at ¶¶ 21, 23, 52)  Defendants contend that the Committee used subjective and qualitative factors only to downwardly adjust the compensation awards. (D.I. 6 at 5-6; D.I. 11 at 5-8)

Assuming plaintiff's allegations to be true – that the effect of the Committee's use of subjective factors was an overreach of its limited discretion – plaintiff still falls short of the rule promulgated in *Weiss* and *Ryan* that, for demand to be excused under the second prong based on a board's violation of a shareholder-approved plan, the allegations must support an inference that said violation was made knowingly and intentionally.  Plaintiff at bar has not alleged that the Committee made a knowing and intentional decision to violate the terms of the 2007 Plan.  The complaint contains no factual particularity regarding the Committee's knowledge or intent and, as such, does not raise a reasonable doubt that the Committee acted with a good faith belief that it was acting in Viacom's best interests and within the discretionary authority granted to it by the 2007 Plan.  Accordingly, the court does not find that plaintiff's allegations, under *Weiss* and *Ryan*, are sufficient to rebut the presumption of the business judgment rule.

Plaintiff argues that in *Sanders v. Wang*, Civ. No. 16640, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999), "[t]he court excused demand because the board had exceeded a clear limitation contained in [an express provision], without further addressing the

20

board's knowledge [or] intent . . . ."  (D.I. 8 at 9) (citations omitted) (internal quotation marks omitted)  In *Sanders*, the Delaware Court of Chancery held that demand was futile where the "board c[ould] not justify its clear violation of the express terms of the [plan] nor . . . justify the unauthorized share awards under any other legal authority." *Sanders*, 1999 WL 1044880, at \*6.  The *Sanders* court was careful to point out that it was dealing with a violation so undeniable that "under the undisputed facts in th[e] case, no matter how favorably [the court] draw[s] factual inferences in favor of the defendants, . . . plaintiffs have established a prima facie case that the . . . board exceeded its authority."  *Id.*  Although the *Sanders* court did not mention whether or not the plaintiffs alleged a knowing or intentional violation, it appears that the challenged transaction was such a clear and undisputed violation, that violation, alone, created a reasonable doubt that the board acted without knowledge.  *See id.* at \*5 ("[T]he provision . . . [wa]s not ambiguous and it [was] clear from the uncontroverted facts that the number of shares the board actually awarded exceeded its limitation of six million shares"); *see also Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 65-66 (D. Mass. 2004) (discussing the import of *Sanders*).

The instant case is distinguishable from *Sanders*.  The uncontroverted facts only establish that the 2007 Plan limited the Committee's use of subjective factors in determining compensation awards and that the Committee, at some point in the process of setting or determining compensation, considered subjective factors.  Given the express authority for the Committee to downwardly adjust compensation and

21

possibly exercise other discretion using subjective factors,[9] there is no clear and undisputed violation, let alone a violation that, standing alone, would create a reasonable doubt that the Board acted without knowledge or intent.

Therefore, the court concludes that plaintiff has not sufficiently alleged, under the heightened pleading standard of Rule 23.1, facts that create a reasonable doubt that the challenged actions were otherwise the product of a valid exercise of business judgment. Demand is not excused. The court grants defendants' motion to dismiss in this regard and need not address defendants' arguments for dismissal of the derivative claim under Rule 12(b)(6).

### B. The Direct Claim

The court next analyzes the direct claim, which defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff's direct claim is premised on his position that I.R.C. § 162(m)(4)(C)(ii) "requires all shareholders to have a vote on plans providing for tax-deductible compensation under I.R.C. § 162(m)." (D.I. 1 at ¶ 58) Defendants argue that I.R.C. § 162(m) is entirely silent on which shareholders are permitted to vote and that Congress did not intend the provision to implicitly preempt Delaware corporate governance statutes. (D.I. 6 at 16-20; D.I. 11 at 10)

For purposes of the direct claim, there are no disputed material facts. The issue may be summarized as the legal question of whether I.R.C. § 162(m)(4)(C)(ii)'s voting requirement preempts Delaware state law allowing for classes of non-voting stock.

---

[9]Section 2.4 of the 2007 Plan provided that the Committee "may, in its sole discretion, reduce the amount of any Award to reflect the Committee's assessment of the Participant's individual performance or for any other reason."  (D.I. 6, ex. A at § 2.4)

Plaintiff posits that, because I.R.C. § 162(m)(4)(C)(ii) "simply requires 'a shareholder vote' without further reference to holders of 'voting stock' or 'stock entitled to vote,'" Viacom's non-voting class B shareholders should have been permitted to vote on the 2012 Plan. (D.I. 1 at ¶ 56) Delaware corporate governance law, meanwhile, permits corporations to offer voting and non-voting classes of stock:

> Every corporation may issue 1 or more classes of stock . . . which classes or series may have such voting powers, full or limited, or no voting powers, and such designations, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof, as expressly vested in it by the provisions of its certificate of incorporation.

8 Del. C. § 151(a). Plaintiff argues that I.R.C. § 162(m)(4)(C)(ii) preempts Delaware law because "voting on a compensation plan in order that it provide tax deductible compensation is a matter of federal law concerning U.S. income taxes, an exclusive federal matter." (D.I. 1 at ¶ 56)

The "ultimate touchstone" in a preemption case is the purpose of Congress. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)) (internal quotation marks omitted). "In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (citation omitted) (internal quotation marks omitted); *see also Wyeth*, 555 U.S. at 565 ("'In all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of

Congress.'" (quoting *Lohr*, 518 U.S. at 485)).[10]

Plaintiff's assertion that I.R.C. § 162(m) occupies the field of federal taxation – a matter of federal law and, therefore, must prevail, even with respect to the voting rights of shareholders – is unpersuasive.  The United States Supreme Court has recognized that "[n]o principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations, including the authority to define the voting rights of shareholders." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88 (1987) (citation omitted).  Plaintiff offers no support for the proposition that it was the clear and manifest purpose of Congress for I.R.C. § 162(m)(4)(C)(ii) to preempt state law regarding shareholder voting powers for the specific purpose of approving plans for tax-deductible compensation.  Rather, plaintiff proposes the opposite logic – that because Congress did not clearly limit I.R.C. § 162(m)(4)(C)(ii) to voting classes of

---

[10]Plaintiff points to *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372-73 (2000), in which the United States Supreme Court stated:

> [E]ven if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute.  We will find preemption where it is impossible for a private party to comply with both state and federal law, and where under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.

(alterations in original) (citations omitted) (internal quotation marks omitted).  However, 8 Del. C. § 151(a) does not "conflict" with I.R.C. § 162(m)(4)(C)(ii) such that it would be impossible for a private party to comply with both.  Rather, the provision of 8 Del. C. § 151(a) at issue is permissive (a corporation "may" issue different classes of stock with different voting rights) and does not require any type of compliance.  Therefore, 8 Del. C. § 151(a) does not stand as a sufficient obstacle to the accomplishment and execution of Congress' full objectives under I.R.C. § 162(m).

24

stock, the provision must include all shareholders.[11]  (*See* D.I. 1 at ¶ 56; D.I. 8 at 16-18)

Although plaintiff also purports to rely on legislative history, the only passage he cites –

that "the compensation must be approved by a majority of shares voting in a separate

vote" (*see* D.I. 1 at ¶ 14; D.I. 8 at 18) – does not demonstrate that Congress

emphasized the importance of a vote including all shareholders, only that Congress

intended to require majority approval by only the "shares voting."[12]  Absent any

indication of a clear and manifest purpose to the contrary, the court is unpersuaded that

Congress intended I.R.C. § 162(m)(4)(C)(ii) to meddle in matters of corporate

governance.

　　The court's conclusion that I.R.C. § 162(m)(4)(C)(ii) does not preempt Delaware

corporate governance law is supported by the Department of Treasury regulations that

are applicable to I.R.S. § 162(m).  The regulations do not indicate that the shareholder

vote must include every shareholder, regardless of the class of stock.  Rather, the

regulations require a majority "of the votes cast on the issue" and explicitly give

deference to state law with respect to how abstentions count in a vote:  "[T]he material

terms of a performance goal are approved by shareholders if, in a separate vote, a

majority of the votes cast on the issue (including abstentions to the extent abstentions

are counted as voting under applicable state law) are cast in favor of approval."[13]

---

[11]For example, plaintiff argues that the I.R.C.'s definitions of "stock" and
"shareholder" do not state any voting requirements.  (*See* D.I. 1 at ¶ 56)

[12]Shareholders are on notice of the voting rights of their class of stock, as set
forth in a corporation's charter or by-laws.

[13]In the preamble to the amended proposed regulations, the Internal Revenue
Service ("IRS") explained the reasoning behind the wording of Tres. Reg. § 1.162-

Treas. Reg. § 1.162-27(e)(4)(vii). Therefore, the IRS itself understood the vote to be

among the voting shares and intended to respect the different voting rights that a

company's charter may accord different classes of stock.

Because I.R.C. § 162(m)(4)(C)(ii) does not preempt state corporate governance

law, the court grants defendants' motion to dismiss as it relates to the direct claim.

## V. CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss with

respect to both the derivative and direct claims. An appropriate order shall issue.

---

27(e)(4)(vii):

> Under Sec. 1.162-27(e)(4)(vii), the material terms of a performance goal
> are considered approved by shareholders if, in a separate vote,
> affirmative votes are cast by a majority of the **voting shares**. In order to
> reflect the fact that certain shares may have more than one vote, and to
> properly deal with abstentions, that section is amended to provide that the
> material terms of a performance goal are considered approved by
> shareholders if, in a separate vote, a majority of the votes cast on the
> issue (including abstentions to the extent abstentions are counted as
> voting under applicable state law) are cast in favor of approval.

Disallowance of Deductions for Employee Remuneration in Excess of $1,000,000, 59
Fed. Reg. 231 (proposed Dec. 2, 1994) (codified at 26 C.F.R. § 1.162-17) (emphasis
added).